UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGANN S.,[1] | ) |
|                 Plaintiff, | ) No. 19 CV 7278 |
| v. | ) Magistrate Judge Young B. Kim |
| KILOLO KIJAKAZI, Commissioner of Social Security,[2] | ) |
|                 Defendant. | ) January 20, 2022 |

**MEMORANDUM OPINION and ORDER**

Georgann S. seeks disability insurance benefits ("DIB") and supplemental security income ("SSI"), asserting that she is disabled by osteoarthritis of the knees, obesity, hypertension, and anxiety. Before the court are the parties' cross motions for summary judgment. For the following reasons, Georgann's motion is denied, and the government's motion is granted:

**Procedural History**

Georgann filed DIB and SSI applications in December 2017 and February 2018, respectively, alleging that she has been disabled since May 1, 2014. (Administrative Record ("A.R.") 18, 206.) Her application was denied initially and upon reconsideration. (Id. at 18, 59-82, 85-110.) She then sought and was granted a

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the first name and last initial of Plaintiff in this opinion to protect her privacy to the extent possible.

[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), she is automatically substituted as Defendant in this case.

hearing before an Administrative Law Judge ("ALJ"). (Id. at 18, 133-34, 135-37.) After a hearing in January 2019 at which Georgann appeared with her attorney and a vocational expert ("VE"), (id. at 29-58), the ALJ concluded in March 2019 that she was not disabled, (id. at 14-23). Thereafter, Georgann filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 10).

## Facts

Georgann attended college and worked as a nurse from 1990 until May 1, 2014, when she stopped working because of knee pain from osteoarthritis, chronic fatigue, deafness in her right ear, and hypertension. (A.R. 63, 128, 235-36, 252, 257, 299.) As a result of her impairments, she alleges she is limited in her ability to lift, squat, bend, stand, walk, sit, kneel, and climb stairs. (Id. at 250, 252, 257.) She submitted documentary and testimonial evidence to support her DIB and SSI claims.

### A.  Medical Evidence

Although Georgann alleges disability beginning in May 2014, there is no medical evidence in the record from that time through November 2017.[3] (A.R. 20.) On December 21, 2017, Georgann visited her medical provider, reporting knee pain that had lasted "several years" and for which she wanted to receive disability benefits. (Id. at 75, 299, 311.) She was diagnosed with pain in both knees and anxiety, with onset dates for both conditions noted as December 21, 2017. (Id. at 311.) Georgann's

---

[3] The ALJ acknowledged in her 2019 decision that Georgann "did not have medical insurance until recently." (A.R. 21.)

2

provider noted that she could "walk[] without restrictions" and exercise occasionally and listed the cause of her anxiety as "job loss." (Id. at 312.) A physical examination revealed "normal tone and motor strength," along with "no contractures, malalignment, tenderness, or bony abnormalities and normal movement of all extremities." (Id. at 313.) Her gait and station were "normal" and cranial nerves were "grossly intact." (Id.) She was found to be obese. (Id.)

Shortly thereafter, on December 27, 2017, Georgann had x-rays taken of both knees. (Id. at 318-21.) In the right knee, there was "mild joint space narrowing involving the medial compartment and moderate to severe joint space narrowing at the patellofemoral compartment." (Id. at 318, 320.) The left knee similarly had "moderate to severe joint space narrowing at the patellofemoral compartment." (Id.) The recorded impressions were "[r]ight knee medial and patellofemoral compartment osteoarthritis, moderate to severe at the patellofemoral compartment" and "[l]eft knee tricompartmental degenerative change, with arthritis moderate to severe at the patellofemoral compartment." (Id. at 319, 321.)

On March 10, 2018, Georgann appeared for internal medicine and psychological consultative examinations. (Id. at 322-24, 326-29.) During her internal medicine examination, Georgann reported knee buckling and pain of 8 out of 10 in severity, as well as anxiety with sleep difficulty. (Id. at 326.) The examiner noted that Georgann walked more than 50 feet without support and had a mildly antalgic gait. (Id. at 328.) She had mild left knee swelling and moderate tenderness in both

3

knees. (Id.) Her range of motion was normal and a straight leg test was negative. (Id.) She showed no signs of anxiety or depression. (Id.)

In her psychological examination, Georgann described her anxiety symptoms as including "sweaty palms" and "heart racing" and explained to the examiner that the "demanding nature of nursing" caused her anxiety. (Id. at 322, 324.) She said she was prescribed Xanax but could not afford to fill the prescription. (Id. at 322.) The psychological consultant diagnosed Georgann with unspecified anxiety disorder "per her history." (Id. at 324.)

In April 2018 Georgann again complained of bilateral knee pain and tenderness and was diagnosed with osteoarthritis. (Id. at 341.) She reported increased pain with walking. (Id. at 342.) On examination she had tenderness in both knees but normal range of motion, gait, and station and no bony abnormalities. (Id.) She was noted to be overweight and appearing anxious. (Id. at 343-44.) Her provider referred her to physical therapy, (id. at 357), which Georgann began in May 2018 to improve lower extremity strength and lessen pain, (id. at 383-84). At her initial physical therapy evaluation, Georgann reported her knee pain to be 0 out of 10 in severity at best and 5 out of 10 at worst. (Id. at 383.) She was discharged from physical therapy the following month after 10 treatment sessions. (Id. at 386.) In December 2018 Georgann experienced elevated heart rate and underwent diagnostic imaging of her chest, which revealed mild degenerative changes in the chest and spine. (Id. at 406, 410, 428-29.)

B.   **Hearing Testimony**

Georgann testified at the hearing that she worked as a domestic helper for a neighbor from the time of her disability onset date in May 2014 through November 2017. (A.R. 35, 41.) Before that job, she worked as a nurse for a staffing agency, assisting patients with medications and other tasks at long-term care facilities and houses for small groups of developmentally disabled individuals. (Id. at 38-40.) Georgann said she cannot return to nursing because of her knee pain, chronic fatigue, and dizziness from blood pressure medication. (Id. at 51.)

In response to the ALJ's questions about treatment for her impairments, Georgann answered that she takes Tylenol and ibuprofen for her knee pain. (Id. at 42.) She testified that she avoids pain medications that may aggravate her high blood pressure. (Id.) With respect to her anxiety, Georgann said she was prescribed Xanax but "trie[s] to use it very sparingly" because of the "addictive nature of that drug." (Id. at 43-45.) Georgann acknowledged she received only one prescription for a two-week supply of Xanax and that she has not asked for a refill but that she would do so. (Id. at 44.)

Georgann detailed her daily activities to include watching television, doing light housework, and cooking and driving short distances. (Id. at 47-49.) In terms of limitations from her impairments, Georgann testified that she can walk for only about 15 minutes and lift and carry "a little less than 10 pounds." (Id. at 48-49.)

A VE also testified at the hearing and described Georgann's past relevant work as that of a registered nurse, medium in physical exertion and as performed, and as

5

a home health nurse, medium in physical exertion but light as performed. (Id. at 53-54.) During the VE's testimony, the ALJ confirmed with Georgann that when she worked for the nurse staffing agency, Georgann worked "quite a few" times as a nurse in a developmental home. (Id. at 54.) The ALJ then posed a series of hypotheticals to the VE regarding whether someone with a specific hypothetical RFC and Georgann's age, education, and past jobs could perform her past work. The first hypothetical concerned an individual with an RFC for light work and exertional limitations, including occasional climbing, kneeling, crouching, and crawling and frequent but not constant pushing and pulling of foot controls. (Id. at 54-55.) In light of Georgann's work history, the VE testified that Georgann could perform her past work as a home health nurse at a light level as performed. (Id. at 55.) The ALJ then asked the VE whether his testimony was consistent with the Dictionary of Occupational Titles ("DOT"), and the VE responded affirmatively. (Id. at 55-56.) He added that his testimony was based also on "common knowledge in the field of vocational rehabilitation" and his personal knowledge from 30 years of experience in the field. (Id.) Georgann's attorney did not ask the VE about his past work testimony.

**C.     The ALJ's Decision**

The ALJ engaged in the standard five-step evaluation process in considering Georgann's DIB and SSI claims. *See* 20 C.F.R. § 404.1520(a). At step one the ALJ determined that Georgann had not engaged in substantial gainful activity between her May 1, 2014 disability onset date and the date of the ALJ's decision. (A.R. 16.) At step two the ALJ found that Georgann suffered from the severe impairments of

osteoarthritis of the knees and obesity, the medically determinable impairment of anxiety, and the non-severe impairment of hypertension. (Id. at 16-17.) At step three the ALJ determined that Georgann's impairments were not of listings-level severity. (Id. at 19.)

Before turning to step four, the ALJ determined that Georgann retained the RFC to perform light work, except that she can only occasionally climb, kneel, crouch, and crawl and frequently but not constantly push and pull foot controls. (Id.) In explaining her assessment, the ALJ pointed to the objective medical evidence, including diagnostic images and examinations, as well as medical treatment for her impairments and the opinions of agency consultants. (Id. at 20-22.) The ALJ deemed unpersuasive the opinion of a nurse practitioner who had examined Georgann twice because she failed to support her opinions with clinical findings and placed limitations that had "no basis in the medical records." (Id. at 22.)

The ALJ concluded at step four that Georgann could perform her past relevant work as a home health nurse as she actually performed it. (Id. at 22-23.) In so finding, the ALJ relied on the VE's testimony that such work is a skilled job that Georgann performed at the light exertional level. (Id. at 23.) Accordingly, the ALJ denied Georgann's claim for benefits. (Id.)

**Analysis**

Georgann contends that the ALJ erred at step four by finding she could perform past relevant work as a home health nurse and by failing to proceed with the sequential evaluation to step five. (R. 37, Pl.'s Mem. at 2.) She also argues that the

7

Appeals Council did not adequately consider medical imaging taken after the ALJ issued her decision. (Id.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This is a deferential standard that precludes the court from reweighing the evidence or substituting its judgment for that of the ALJ, allowing reversal "only if the record compels a contrary result." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted).

**A.     Past Relevant Work**

Georgann argues that the ALJ lacked substantial evidence to support her step-four finding that Georgann could perform past relevant work as a home health nurse. (R. 37, Pl.'s Mem. at 8-9.) As the claimant, Georgann bears the burden of showing that her impairments preclude her from performing past relevant work. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also Barnhart v. Thomas*, 540 U.S. 20, 25 (2003) (stating that at step four claimant must show she cannot perform "previous work"). If Georgann can perform the requirements of her past relevant work "in the manner [she] performed it" despite her impairments, then she is not disabled. *Ray v. Berryhill*, 915 F.3d 486, 491 (7th Cir. 2019); *see also Barnhart*, 540 U.S. at 25. A VE may assist the ALJ in determining whether a claimant can perform

past relevant work by "testify[ing] objectively and impartially about the exertional requirements of various jobs." *Smith v. Berryhill*, No. 16 CV 5451, 2018 WL 4679584, at *7 (N.D. Ill. Sept. 28, 2018).

Here the ALJ relied on the VE's testimony in finding that Georgann—subject to the limitations identified in the hypothetical presented, which mirrors the RFC assessed by the ALJ—could perform her past relevant work as a home health nurse as actually performed. (A.R. 23.) At the hearing the VE classified Georgann's past work as both a registered nurse, medium in exertion and as performed, and as a home health nurse, medium in exertion but light as performed. (Id. at 53-54.) When the ALJ asked the VE whether a person with Georgann's RFC could perform past relevant work with the limitations identified, the VE responded "[p]ossibly the home health being as performed at a light level not per the DOT, though, but as performed." (Id. at 54-55.) Based on the VE's testimony, the ALJ found that Georgann could perform her past home health nurse job as actually performed. (Id. at 23.)

Georgann challenges the ALJ's step-four finding on several grounds, arguing first that it rests on "misstatements of fact"—namely, that Georgann "worked as a home health nurse from 2009 to 2014." (R. 37, Pl.'s Mem. at 8-9.) Georgann contends that the record shows she instead worked as a registered nurse during this period "with some home health assignments that were light as performed." (Id.; see also R. 40, Pl.'s Reply at 6 (arguing Georgann "was hired, paid, and worked as a registered nurse" and only "[p]ortions of [the] job required her to perform home health nurse assignments, which were light as performed").) This distinction is significant, she

9

says, because the VE found that her past work as a registered nurse was medium in physical exertion and as performed, and the ALJ's RFC limits her to light work. (R. 37, Pl.'s Mem. at 8-9.)

Georgann's argument rests on a fundamental misunderstanding of the step-four inquiry. She relies on the form of her past work, as set forth in her job title, over the substance of the requirements of that work. (Id.) But what matters at step four is not simply the title of the past work but rather the mental and physical responsibilities associated with that work. *See Barnhart*, 540 U.S. at 24-25; 20 C.F.R. §§ 404.1520(f), 416.920(g). While Georgann insists that she worked as a registered nurse, and not as a home health nurse, the VE provided objective and impartial testimony finding otherwise. *Smith*, No. 16 CV 5451, 2018 WL 4679584, at *7. In so finding, the VE considered Georgann's own testimony that during her employment with a nurse staffing agency from 2009 to 2014, she worked in developmental homes "quite a few times" and "very regular[ly]." (Id. at 53-54, 243.) The ALJ relied on the VE's characterization in determining that Georgann's past work included home health nurse from 2009 to 2014. (Id. at 23.) The court finds no error in the ALJ's factual statement.

Georgann's next argument—that the ALJ erred because Georgann had no past "standalone job" as a home health nurse and no job to which she may return—is flawed for similar reasons. (R. 40, Pl.'s Reply at 3, 6.) At step four the ALJ determines whether the claimant's abilities, as assessed in the RFC, match the requirements of past work—not whether the past job exists. *See Barnhart*, 540 U.S.

at 22, 24-26 (rejecting disability claimant's argument that she was not able to perform past work where her prior job as elevator operator had been eliminated); 20 C.F.R. §§ 404.1520(f), 416.920(g). So long as Georgann was able to perform her past work as she actually performed it or as it is generally performed in the national economy, her disability claim fails. *See id.* § 404.1560(b)(2) (stating that VE "may offer relevant evidence . . . concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy"). Here the VE found that a person with Georgann's RFC could perform her past relevant work as a home health nurse as actually performed. (R. 39, Govt.'s Mem. at 4.) Thus, it matters not whether she has a job to which she may return. *See Barnhart*, 540 U.S. at 24-26. The VE's finding—that despite her limitations a person with Georgann's RFC could perform her past work as a home health nurse "in the manner [she] performed it"—was sufficient to support the ALJ's decision. *See Ray*, 915 F.3d at 491.

Georgann further contends the ALJ erred by finding she could perform past work where only a "mere[] possibility" existed that she could do so. (R. 37, Pl.'s Mem. at 9-10.) Specifically, when the ALJ asked the VE whether a hypothetical person with Georgann's RFC could perform past work, the VE responded "[p]ossibly the home health being as performed at a light level, not per the DOT, though, but as performed. The DOT says it has occasional crouching, kneeling, so it's not frequent; it's occasional." (A.R. 54-55.) Georgann seizes on the word "[p]ossibly" to argue that

11

more certainty was required.⁴ (R. 37, Pl.'s Mem. at 10.) The court appreciates that the VE's testimony could have been clearer. But after using the word "[p]ossibly" the VE qualified his response by explaining that a person with Georgann's RFC could not meet the demands of past work as described in the DOT but that she could satisfy the requirements as actually performed. (A.R. 54-55.) To the extent Georgann perceived any ambiguity in the VE's testimony, as the party bearing the burden of proof at step four, her attorney could have cross examined the VE during the hearing for clarification. *See Young*, 362 F.3d at 1000. Having failed to do so, Georgann cannot now argue that the ALJ "misrepresented" such testimony. (R. 40, Pl.'s Reply at 3); *see Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) (finding that ALJ was entitled to credit VE testimony where claimant did not object during hearing); *Donahue v. Barnhart*, 279 F.3d 441, 446-47 (7th Cir. 2002) (finding that ALJ may rely on unchallenged VE testimony regarding jobs claimant can perform).

Finally, Georgann argues that the ALJ improperly "conflate[d]" her ability to work as a domestic helper for her neighbor with her past work performing "occasional home health assignments." (R. 37, Pl.'s Mem. at 9.) During the hearing, however, the ALJ expressly stated that "[t]he job with the neighbor is not past work" and that she did not "need that described." (A.R. 40.) Additionally, when the VE testified that Georgann's past relevant work included working as a home health nurse, the ALJ

---

⁴ Insofar as Georgann contends the ALJ was required to find that past work "exists in significant numbers," (R. 37, Pl.'s Mem. at 10), the Supreme Court has found such qualifying language (that work must exist in substantial numbers in the national economy) applies only at step five, *Barnhart*, 540 U.S. at 26.

12

asked Georgann how often she performed assignments in developmental homes versus nursing homes. (Id. at 54.) This line of questioning, which was followed by the VE's opinion that home health nurse qualified as past relevant work, (id. at 54-55), confirms that the VE did not consider Georgann's work as a domestic helper as part of her past relevant work finding.

In considering Georgann's step-four argument, and in particular her challenge to the VE's use of the word "[p]ossibly" in his past work testimony, the court is mindful that Georgann bears the burden of showing that she cannot perform the requirements of past work. *Young*, 362 F.3d at 1000. Her attorney did not cross examine the VE regarding this issue during the hearing. And even in this appeal, Georgann makes clear that she is not contesting such testimony. (R. 40, Pl.'s Reply at 8.) The ALJ confirmed during the hearing that the VE's testimony was consistent with the DOT, "common knowledge," and the VE's own personal knowledge based on 30 years of experience as a vocational rehabilitator. (A.R. 55-56.) Accordingly, the court finds enough "relevant evidence as a reasonable mind might accept as adequate" to support the ALJ's past work determination. *Biestek*, 139 S. Ct.at 1154; *Taylor v. Kijakazi*, No. 21-1458, ___ Fed.4th ___ (7th Cir. Dec. 22, 2021) (noting that substantial evidence standard "is not a demanding requirement").

**B.     Step-Five Analysis**

Georgann argues that because the VE found only a possibility that she could perform past work, the ALJ was required to perform a step-five analysis to ensure sufficient work existed in the national economy that she could perform. (R. 37, Pl.'s

13

Mem. at 9-10.) Because the five-step evaluation is sequential, however, the ALJ "need not progress" to step five if she makes a "conclusive finding" at step four that the claimant can perform past relevant work. *Young*, 362 F.3d at 1000 (internal quotations omitted); s*ee also Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020) ("If a claimant cannot perform his previous work, the Social Security Administration bears the burden of showing that a significant number of other jobs are available to the claimant." (citation omitted)); 20 C.F.R. § 404.1520(a)(4) ("If we can find that [a claimant is] disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). Where, as here, Georgann did not satisfy her burden at step four of showing she could not perform past relevant work, the ALJ was not required to perform a step-five analysis.[5] *See Young*, 362 F.3d at 1000.

## C. Post-Decision Evidence

If remand is ordered, Georgann asks the court to direct the ALJ to consider the April 12, 2019 knee x-rays she submitted to the Appeals Council after the ALJ issued her March 2019 decision. (R. 37, Pl.'s Mem. at 11-13.) The x-rays captured standing (lateral and oblique) views of Georgann's knees, revealing "moderate degenerative joint space narrowing and spurring" but "no evidence of acute osseous injury" in either knee. (A.R. 8-9.) The Appeals Council found that the x-rays did not relate to

---

[5] For this reason the court need not reach Georgann's step-five argument that the ALJ unfairly "stopped a line of questioning" regarding the effects of her expired nursing license. (R. 37, Pl.'s Mem. at 10-11.) As the government explains, at step four social security guidelines instruct ALJs not to consider "whether the claimant has maintained licensure or currently meets the qualifications for licensure to do [past relevant work]." (R. 39, Govt.'s Mem. at 7 (citing POMS DI 25005.001C).)

14

the applicable period and denied Georgann's request to review the ALJ's decision. (Id. at 1-2.) Georgann contends that the Appeals Council should have considered the evidence because she was "without medical insurance" before the ALJ issued her decision and there were no "weight-bearing x-ray[s]" of Georgann's knees in the record. (R. 37, Pl.'s Mem. at 11 (citing A.R. 25).) Without such evidence, the ALJ could not have "properly analyze[d] the possibility that obesity would exacerbate" her osteoarthritis, Georgann asserts. (R. 40, Pl.'s Reply at 9-10.)

The Appeals Council will consider newly submitted evidence only if it is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). The Appeals Council determined that the April 2019 x-rays did not satisfy this standard because they did not relate to the period on or before the ALJ's decision. *See Stepp v. Colvin*, 795 F.3d 711, 723 (7th Cir. 2015). The time-relevant requirement precludes claimants like Georgann from submitting post-hearing evidence unless it "shed[s] light on her impairments and disabilities from the relevant insured period." *Million v. Astrue*, 260 Fed. Appx. 918, 922 (7th Cir. 2008). The government argues that the April 2019 x-rays, which post-dated the ALJ's decision by nearly a month, provided only an "isolated, momentary snapshot" of her condition at that time. (R. 39, Govt.'s Mem. at 8.) Based on the circumstances presented, this court agrees with the government. The April 2019 x-rays alone—without evidence showing a change in Georgann's symptoms, diagnoses, or treatment—do not shed light on her impairments during the applicable period.

15

*See Love v. Colvin*, No. 12 CV 7141, 2014 WL 2037158, at *9-10 (N.D. Ill. May 16, 2014).

Even if the April 2019 x-rays satisfied the time-relevant requirement, the new evidence does not create a "reasonable probability" that the ALJ's decision would change. 20 C.F.R. § 404.970(a)(5). To be sure, the record considered by the ALJ included December 2017 bilateral knee x-rays. (R. 39, Govt.'s Mem. at 9.) The ALJ described those x-rays as revealing "medial and patellofemoral compartment osteoarthritis, moderate to severe at the patellofemoral compartment" in the right knee and "tri-compartmental degenerative change with arthritis moderate to severe at the patellofemoral compartment" in the left knee. (A.R. 20.) The April 2019 x-rays appear to show similar results—"moderate degenerative joint space narrowing and spurring" in both knees. (Id. at 8.) Given the "moderate to severe" osteoarthritis reported in the December 2017 x-rays, this court cannot say with any level of certainty—let alone reasonable probability—that the "moderate" degenerative changes noted in the April 2019 x-rays would have altered the ALJ's decision.

Further bolstering this finding is the ALJ's discussion of the December 2017 x-rays, in which she addressed Georgann's osteoarthritis and "additional and cumulative effects of obesity." (Id. at 20-21.) Despite Georgann's reports of knee pain and tenderness and osteoarthritis diagnosis, the ALJ noted that Georgann treated her condition with ibuprofen and physical therapy. (Id.; see also id. at 237, 294.) Georgann continued to report "increased knee pain" and "feeling like her knees were going to buckle," but "minimal findings" on examination showed "normal gait and

16

station with normal motor strength and tone and no contractures, malalignment, tenderness, or bony abnormalities." (Id. at 21.) Additionally, Georgann "ambulated normally without an assistive device" and reported feeling better with only a short period of physical therapy. (Id.) In assessing Georgann's RFC, the ALJ expressly considered Georgann's obesity and its effects combined with her other impairments. (Id. at 21-22.) In short, the ALJ engaged in a meaningful discussion of Georgann's osteoarthritis, (id. at 20-21), and her obesity, (id. at 19, 21), and supported her RFC with substantial evidence. Because the court finds no legal error in the Appeal Council's refusal to consider the April 2019 x-rays, the court declines to remand on this basis.

## Conclusion

For the foregoing reasons, Georgann's motion for summary judgment is denied, and the government's motion is granted.

ENTER:

_____
**Young B. Kim
United States Magistrate Judge**

17